1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

7

E.C.,[1]

8

Petitioner,

9

v.

10

KRISTI NOEM, *et al.*,

11

Respondents.

12

Case No. 2:25-cv-01789-RFB-BNW

**ORDER**

13
14
15
16

Pending before the Court is Petitioner E.C.'s Motion for a Temporary Restraining Order or Preliminary Injunction (ECF No. 4). For the following reasons, the Court grants the Motion for Preliminary Injunction.

17

## I.    INTRODUCTION

18
19
20
21
22
23
24
25
26
27

This case presents a challenge to the Government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection during the pendency of their removal proceedings. The instant Petition is one of a growing number of like challenges in this District and across the country. Multiple putative class actions challenging the policy are currently pending before this Court. See Maldonado Vazquez v. Feeley, Case No. 2:25-cv-01542-RFB-EJY; Dominguez-Lara v. Noem, Case No. 2:25-cv-01533-RFB-BNW. The challenged policy subjects millions of noncitizens to prolonged detention without the opportunity for release on bond, no matter how long they have resided within the country. The policy arises from the recent decision by the Department of Homeland Security (DHS) and the Department of Justice

28

---

[1] Petitioner is proceeding under a pseudonym with leave of the Court. See ECF No. 17.

(DOJ) to significantly alter its interpretation of the Government's detention authority during the pendency of removal proceedings under the Immigration and Nationality Act (INA), as of a July 8, 2025 internal memorandum issued by DHS to all Immigration Customs and Enforcement (ICE) employees. Specifically, the policy is based on the Government's sweeping rereading of 8 U.S.C. § 1225(b)(2) as subjecting all noncitizens present in the U.S. who entered the country without inspection to mandatory detention, rather than the discretionary detention scheme under 8 U.S.C. § 1226(a), which provides robust due process protections including the opportunity for release on bond pending the resolution of removal proceedings after an individualized custody redetermination hearing (*i.e.*, bond hearing) before an immigration judge. As the record in this case reveals, and Respondents admit, this shift is a substantial and far-reaching break from longstanding agency policy "to routinely release individuals who entered without inspection" like Petitioner. ECF No. 13 at 2.

On September 5, 2025, the Bureau of Immigration Appeals (BIA) signaled that it has adopted DHS' interpretation of the INA as now mandating detention without bond for all noncitizens who reside in the U.S. and entered without inspection. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). The BIA's decision held that immigration judges lack jurisdiction to hold bond hearings or grant bond to all individuals charged with entering the country without inspection. Id. Until this reinterpretation of the statutory scheme by the BIA, *millions* of noncitizens had been informed that they could participate in removal proceedings, which can take months or years, out of custody, so long as they could establish they were neither a flight risk nor danger to the community.

In Maldonado Vazquez v. Feeley, this Court conducted statutory analysis of the relevant provisions of the INA, 8 U.S.C §§ 1225(b)(2) and 1226(a), and found that the Government and BIA's interpretation of the § 1225(b)(2) is both contrary to the plain meaning of the statutory text, legislative history, and decades of agency practice, and raises serious constitutional concerns under the Due Process clause of the Fifth Amendment. Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *11-16 (D. Nev. Sept. 17, 2025). Accordingly, the Court found the petitioner Mr. Maldonado Vazquez was likely to succeed in establishing that § 1226(a) applied to

1  him and other similarly situated noncitizens, and granted him a preliminary injunction, enjoining

2  the federal respondents from denying his release from detention on bond on the basis that he is

3  subject to mandatory detention under § 1225(b)(2). Id. at *11-23.

4      Petitioner E.C. is a noncitizen resident of Utah who has been detained in ICE custody in

5  the Nevada Southern Detention Center (NSDC) since August 4, 2025. Respondents assert that

6  Petitioner's detention without the opportunity for an individualized bond hearing is lawful under

7  8. U.S. C § 1225(b)(2), for the same reasons they asserted in Maldonado Vazquez. As such, the

8  Court's analysis regarding Mr. Maldonado Vazquez's entitlement to a preliminary injunction

9  applies with equal force to Petitioner E.C.'s instant Motion for preliminary relief. Because, for the

10  reasons set forth in this Court's decision in Maldonado Vazquez, which are incorporated by

11  reference with some factual distinctions and new arguments raised by Respondents discussed

12  below, the Court finds Petitioner will likely succeed in establishing that the Government's

13  authority to detain him arises from 8 U.S.C. § 1226, not § 1225(b)(2), the Court will enjoin

14  Respondents from continuing to prevent Petitioner's release on bond on the basis that he is subject

15  to mandatory detention under § 1225(b)(2).

16      Additionally, this case presents legal issues not raised in Maldonado Vazquez, because

17  Petitioner also challenges the lawfulness of his detention under § 1226(c), as recently amended by

18  the Laken Riley Act, which would subject him to mandatory detention without bond based on

19  criminal charges for which he was acquitted. As discussed below, the Court interprets the relevant

20  provisions for § 1226(c) to avoid the constitutional due process problems that would arise if that

21  section applied to mandate Petitioner's detention without bond. Accordingly, the Court finds

22  Petitioner is likely to succeed in establishing that he is detained under § 1226(a) and its

23  implementing regulations, such that he is entitled to an individualized bond hearing before an

24  immigration judge. Because the Court further finds that Petitioner's prolonged detention without

25  a bond hearing is causing immediate irreparable harm to Petitioner and his family, and the balance

26  of the equities and public interest tip sharply in his favor, the Court grants Petitioner's Motion and

27  enjoins Respondents from continuing to deprive him of the opportunity for release on bond on the

28  basis that he is subject to mandatory detention under § 1225(b)(2) or § 1226(c).

## II.    PROCEDURAL HISTORY

On September 22, 2025, Petitioner filed his Verified Petition for Writ of Habeas Corpus. ECF Nos. 1, 1-1. He concurrently filed the instant Motion for Temporary Restraining Order or Preliminary Injunction (TRO/PI). ECF No. 4.

On September 23, 2025, the case was transferred from Chief Judge Gordon to the undersigned Judge, as related to the pending putative habeas class action in <u>Maldonado Vazquez v. Feeley</u>, Case No. 2:25-cv-01542-RFB-EJY, pursuant to Rule 42 of this Court's Local Rules and the Federal Rules of Civil Procedure. <u>See</u> ECF No. 5.

On September 24, 2025, the Court directed the Clerk of Court to serve the Petition on Respondents and set a briefing schedule, with an expedited briefing schedule on the instant Motion. ECF No. 7. On October 1, 2025, Respondents filed their Opposition. ECF No. 13. On October 3, 2025, Petitioner filed his Reply. ECF No. 14.

On October 7, 2025, the Court held a hearing on the Motion for TRO/PI and took the matter under advisement, with the instant written Order to follow. <u>See</u> ECF No. 15.

## III.    BACKGROUND

### A.  Petitioner E.C.

The Court makes the following findings of fact relevant to Petitioner's individual circumstances for the purpose of this Motion.

Petitioner E.C. is a 53-year-old resident of Orem, Utah. He is originally from Ecuador, where he met his fiancé, K.V., and became a father figure to her two children. Petitioner fled Ecuador with his family to the U.S. to escape threats of violence and retaliation by local organized crime groups due to his refusal to traffic drugs and weapons.

Petitioner last entered the U.S. on February 2, 2024, in Lukeville, Arizona. Upon arrival, Petitioner immediately presented himself to immigration authorities in Tuscon, Arizona. He was detained for one day, released on February 3, 2024, and issued a Notice to Appear.

The Notice to Appear (NTA) has three boxes: (1) "you are an arriving alien"; (2) "you are an alien present in the United States who has not been admitted or paroled"; (3) "you have been

admitted to the United States but are removable for the reasons stated below." <u>See</u> ECF Nos. 1-1 at 45-46; 13-1. The second box contains an X indicating DHS determined Petitioner was "an alien present in the United States who has not been admitted or paroled." <u>Id.</u> The NTA charged Petitioner with being removable as inadmissible under 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) as having entered the U.S. without inspection, and defined his status as "an alien present in the United States without being admitted or paroled, who arrived in the United States at any time or place other than as designated by the Attorney General." <u>Id.</u> The NTA further commenced removal proceedings under 239(a)(1) (8 U.S.C. § 1229A) and set an in-person hearing before an IJ of the Utah Immigration Court on April 9, 2027. <u>Id.</u>

After release Petitioner traveled to Orem, Utah to unite with his family. Petitioner and his fiancé K.V. had a child on March 31, 2025, who is a U.S. Citizen. Petitioner, his fiancé and their three children now live in Orem, Utah.

On August 14, 2024, Petitioner filed an I-589 application for asylum.

On June 16, 2025, Petitioner was arrested for charges arising out of a misunderstanding with police. Petitioner's fiancé, K.V., was experiencing a manic episode linked to post-partum symptoms and became upset when Petitioner had to leave for work. While Petitioner attempted to prevent K.V. from harming herself, she hurt her arm on the car door. A neighbor who heard the commotion called the police for assistance. The responding officer, who did not speak Spanish and therefore could not communicate with Petitioner or K.V., mistakenly attributed her injuries to Petitioner. He was arrested and booked in Utah County Jail. The State of Utah charged Petitioner with robbery, aggravated assault, assault, and three counts of domestic violence in the presence of a child.

After a two-day jury trial, a unanimous jury found Petitioner not guilty on all counts, and the criminal case against him was dismissed on August 4, 2025. Immediately upon release from jail, ICE seized Petitioner and transported him to NSDC. He has been detained there since August 4, 2025. There is no indication in the record that ICE issued a new NTA to Petitioner, or that Petitioner was arrested pursuant to a warrant.

Upon arresting Petitioner, ICE issued a public media post listing Petitioner as "Worst of

the Worst." <u>See</u> ECF. No 1-1 at 10-13. The official account of ICE Salt Lake City on the social media platform "X" also posted a photo of Petitioner, which stated "[h]is criminal history includes arrests for aggravated assault, domestic violences, assault, & robbery" and "[h]e'll remain in custody pending immigration proceedings." <u>Id.</u> at. 15. Neither posting mentioned that Petitioner was acquitted of all criminal charges by a unanimous jury.

As a result of his ongoing detention, Petitioner has been severed from his significant financial, familial, and community ties. Petitioner is the primary breadwinner for his family of five. Because of Petitioner's detention, Petitioner's fiancé is forced to care for their three young children, including a five-month-old baby, on her own, while also maintaining full time employment.

The Court sets forth the following relevant statutory and regulatory background regarding the Government's authority to detain Petitioner under the INA.

**B.  Detention Under 8 U.S.C. § 1225(b)(2) versus § 1226(a)**

The Court fully incorporates by reference the statutory and regulatory background relevant to the Government's challenged mandatory detention policy set forth in its ruling in <u>Maldonado Vazquez</u>. 2025 WL 2676082, at *3-5. The Government's new position on its authority to detain noncitizens pending removal proceedings took nationwide effect on July 8, 2025, pursuant to an internal memo issued to all ICE agents. <u>Id.</u> at *5. The BIA did not immediately adopt this position. Rather, in <u>In re Matter of Akhmedov</u>, 29 I. & N. Dec. 166 (B.I.A. 2025), it stated that a noncitizen who entered the U.S. unlawfully three years earlier was subject to discretionary detention under § 1226(a). And on August 4, 2025, nearly one month after the July DHS memo, the Attorney General designated <u>Matter of Akhmedov</u> "as precedent in all proceedings involving the same issue or issues." 29 I. & N. at 166 n.1. That changed on September 5, 2025, in <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216 (B.I.A. 2025) ("Hurtado"), when the BIA for the first time held that IJs have no jurisdiction to consider bond for noncitizens present in the U.S. who were not lawfully admitted, because they are "applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(1)(A), and must be detained for the duration of their removal proceedings." <u>Id.</u> at 220.

A key factual and procedural distinction in this case is that Mr. Maldonado Vazquez requested and was granted a bond hearing and release on bond by a Las Vegas immigration judge before the BIA's September 9th decision in <u>Huratdo</u>. At that hearing, Mr. Maldonado Vazquez successfully established "to the satisfaction of the Immigration Judge . . . that he [] does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." <u>Hernandez v. Sessions</u>, 872 F.3d 976, 982 (9th Cir. 2017) (quoting <u>In re Guerra</u>, 241 I. & N. Dec. 37, 38 (B.I.A. 2025)). When the Court granted a preliminary injunction, Mr. Maldonado Vazquez remained in ICE detention based on the same detention policy that Petitioner E.C. challenges and the Government continues to defend, however, in <u>Maldonado Vazquez</u>, DHS continued to detain him pursuant to an automatic stay of the IJ's bond release order pending DHS' appeal to the BIA, under 8 C.F.R. § 1003.19(i)(1). <u>See</u> 2025 WL 2676082, at *5-6; 16-23. In contrast, Petitioner E.C. did not seek a bond hearing prior to the BIA's ruling in <u>Hurtado</u>.

Petitioner asserts he has not requested a bond hearing because of the BIA's decision in <u>Hurtado</u>. The Court notes from the record in related Petitions pending before it, that pursuant to <u>Hurtado</u>, after holding a bond hearing and granting bond to a noncitizen who entered the country without inspection, IJs have issued memorandum decisions finding that <u>Hurtado</u> superseded their bond release orders. <u>See e.g.</u>, <u>Perez Sales v. Feeley</u>, No. 25-cv-01819-RFB-BNW, ECF No. 1-11; <u>Carlos v. Noem</u>, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156, at *3-4 (D. Nev. Oct. 10, 2025).

Because after <u>Hurtado</u>, as Respondents assert, the administrative remedy of a bond hearing before an IJ is not currently available to Petitioner, Petitioner first challenges Respondents' authority to detain him under 8 U.S.C. § 1225(b)(2) without the opportunity for custody redetermination by an IJ under § 1226(a), and requests the Court's intervention to enjoin Respondents from continuing to prevent his release based on the mandatory detention policy that this Court found is unlawful under the INA in <u>Maldonado Vazquez</u>. Petitioner's second basis for challenging Respondents' authority to detain him without providing a bond hearing is an as applied challenge to § 1226(c), as amended by the Laken Riley Act.

///

**C.  Mandatory Detention Under 8 U.S.C. § 1226(c) and The Laken Riley Act**

Asserting that he is detained under § 1226, not § 1225(b)(2), Petitioner further challenges his detention without the opportunity for a bond hearing under § 1226(c). He contends that if that section, as amended by the Laken Riley Act, applies to mandate his detention without a bond hearing, then it violates the Due Process Clause of the Fifth Amendment. The Court sets forth the following statutory background relevant to § 1226(c), which is discussed in more detail below.

Relying on legislative findings that individuals with certain criminal convictions posed elevated risks of danger to the community and flight, through the Illegal Immigration Reform and Responsibility Act of 1996 ("IIRRA"), Congress enacted provisions under § 1226(c) of the INA which mandated detention without bond for noncitizens convicted of specific, enumerated crimes, including aggravated felonies, drug trafficking, and crimes involving moral turpitude. See Demore v. Kim, 538 U.S. 510, 513 (2003). Section 1226(c) thus "carves out a statutory category of aliens who may *not* be released under § 1226(a)." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (emphasis in original).

This year, Congress amended § 1226(c) through the Laken Riley Act ("LRA"), to add a new category of noncitizens subject to mandatory detention without bond. Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. § 1226(c)(1)(E). In doing so Congress did not rely on any findings linking criminal charges or arrests for such offenses with higher risks of flight or danger. Under this new provision, detention without bond is mandated for any noncitizen who is charged as "inadmissible" as having entered the U.S. without inspection under 8 U.S.C. § 1182(a)(6)(A) and:

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released,
>
> without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

Because Petitioner was arrested and charged with robbery under Utah Code § 76-6-301, which is a crime that includes the essential elements of theft or larceny, and because the LRA

1    amendment, by its plain language, would apply without exception to noncitizens charged with a

2    theft offense even where acquitted, Petitioner contends that § 1226(c)(1)(E)(i)-(ii) as applied to

3    him violates his due process rights.

4

5    **IV.    LEGAL STANDARDS**

6        **A. Preliminary Injunction**

7          Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive

8    relief to prevent "immediate and irreparable injury." Fed R. Civ. P. 65(b). A preliminary injunction

9    is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

10   entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain

11   a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on

12   the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary

13   relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an

14   injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir.

15   2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

16         In the Ninth Circuit, a preliminary injunction may also issue under the "serious questions"

17   test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the

18   continued viability of this doctrine post-Winter). According to this test, "serious questions going

19   to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance

20   of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

21   irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth

22   Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may

23   offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669

24   (9th Cir. 2017).

25       **B.  28 U.S.C. § 2441 Petition for Writ of Habeas Corpus**

26         The Constitution guarantees that the writ of habeas corpus is "available to every individual

27   detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S.

28   Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon

1   the legality of that custody, and . . . the traditional function of the writ is to secure release from

2   illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be

3   granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or

4   federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means

5   of reviewing the legality of Executive detention, and it is in that context that its protections have

6   been strongest." <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas

7   jurisdiction includes challenges to immigration-related detention. <u>Zadvydas v. Davis</u>, 533 U.S.

8   678, 687 (2001); <u>see also</u> <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003).

9

10  **V.   DISCUSSION**

11         Respondents' arguments in opposition are largely identical to those the Court addressed

12  and rejected in <u>Maldonado Vazquez</u>: Respondents argue (1) the Court lacks jurisdiction over the

13  Petition under 8 U.S.C. § 1252; (2) even assuming jurisdiction, Petitioner is unlikely to succeed

14  on the merits because all noncitizens who entered the U.S. without inspection are "applicants for

15  admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2); (3) Petitioner is not facing

16  irreparable harm by suffering harms inherent in detention; (4) and, regarding the balance of

17  equities, the Government and public's interest in "enforcement of the U.S' immigration laws is

18  significant," and the BIA has an "institutional interest to protect its administrative agency

19  authority" without judicial intervention. <u>See</u> ECF No. 13 at 20-21. The Court fully incorporates its

20  discussion and rejection of these arguments regarding jurisdiction and the <u>Winter</u> factors from its

21  ruling in <u>Maldonado Vazquez</u>, 2025 WL 2676082 at *7-23; and more recently in <u>Sanchez Roman</u>

22  <u>v. Noem</u>, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 at *4-7 (D. Nev. Sept. 23, 2025),

23  with several relevant distinctions discussed below. The Court further addresses Respondents' new

24  argument that because Petitioner has not formally sought, and thus not formally been denied, a

25  bond hearing before an IJ, his claims "present no case or controversy" and thus Petitioner lacks

26  Article III standing. <u>See</u> ECF No. 13 at 6-7.

27       **A.   Standing**

28         In a lawsuit seeking injunctive relief to remedy a prospective harm—for example, an

injunction against a government policy—standing requires a showing that, "if unchecked by the litigation, the defendant's allegedly wrongful behavior will occur or continue, and that the threatened injury is certainly impending." Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167 (2000) (alteration in original) (quotation marks and citation omitted). Respondents argue that because "Petitioner has not yet had a bond hearing, nor has he been denied a bond hearing" his injury is neither real and immediate nor certainly impending. See ECF No. 13 at 6-7. But Respondents simultaneously insist Petitioner is detained under § 1225(b)(2) and that they will continue to detain him on that basis. Therefore, Petitioner—who has suffered the injury of prolonged detention without a bond hearing for over two months—is presently suffering a real and immediate injury. See Gonzalez v. United States Immigr. & Customs Enf't, 975 F.3d 788, 804 (9th Cir. 2020) ("[r]emaining confined in jail when one should otherwise be free is an Article III injury plain and simple[.]") (citing Mendia v. Garcia, 768 F.3d 1009, 1012 (9th Cir. 2014)).

Further, the Court finds that Petitioner is certain to be denied a bond hearing without judicial intervention, and therefore satisfies the standing requirements for injunctive relief to prevent a prospective injury. See Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (a "party facing prospective injury" must show "the threatened injury is real, immediate, and direct[.]"). The Court finds Petitioner's denial of a bond hearing under § 1225(b)(2) by an Immigration Judge is real, immediate, direct, and "certainly impending" because IJs are bound by the BIA's decision in Hurtado, as reflected by the memorandum decisions on record before this Court of multiple IJs who found their prior grants of bond were superseded by Hurtado. Because Hurtado divests IJs of jurisdiction to consider the release on bond of any noncitizen who entered without inspection, Petitioner's injury of detention without the due process procedures afforded under § 1226(a) is both immediate and certain to continue without Court intervention. See id. (holding a plaintiff who faced an ongoing and prospective detention injury when he commenced suit suffered an injury sufficient to confer standing).

Similarly, the Court finds Petitioner has standing to bring his challenge to his prospective detention without bond pursuant to 8 U.S.C. § 1226(c)(1)(E)(ii). As discussed below, the Court agrees that the challenged statutory provision would on its face apply to mandate Petitioner's

detention. Additionally, although Respondents did not assert Petitioner is detained under § 1226(c)(1)(E)(ii) in their briefing, at the October 7, 2025 hearing on the instant Motion, Respondents represented that ICE officials arrested and detained Petitioner based on his dismissed criminal charges, pursuant to the Laken Riley Act. Accordingly, the Court finds that Petitioner faces a prospective detention injury without court intervention, because even if enjoined from applying § 1225(b)(2) to Petitioner, an IJ would likely apply § 1226(c) based upon arguments by Respondents to mandate Petitioner's detention without bond under that provision. Further, no IJ would have the authority to consider Petitioner's as applied constitutional challenge to that provision. See Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013) ("[t]he BIA does not have jurisdiction to determine the constitutionality of the statutes it administers") (citing Padilla–Padilla v. Gonzales, 463 F.3d 972, 977 (9th Cir. 2006)).

### B. Jurisdiction

The Court incorporates by reference its finding of jurisdiction in Maldonado Vazquez, WL 2710211 at *7-9 and Sanchez Roman, WL 2710211 at *5. Respondents reiterate arguments that the Court lacks jurisdiction over Petitioner's habeas claims under § 1252(g) and 1252(b)(9), which the Court has already rejected as precluded by Ninth Circuit and Supreme Court precedent.

The Supreme Court has rejected Respondents' proffered reading of § 1252(g) as covering "'all claims arising from deportation proceedings'" or imposing "'a general jurisdictional limitation.'" Dept. of Homeland Sec. v. Regents of the U. of California, 591 U.S. 1, 14 (2020) (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)). And as recently affirmed by the Ninth Circuit, this Court has "jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney' General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority." Ibarra-Perez v. United States, _ F.4th _, 2025 WL 2461663 (9th Cir. Aug. 27, 2025) (quoting United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004)). Because Petitioner does not challenge ICE's decision to "commence" removal proceedings against him, by for example, issuing a Notice to Appear, nor the continued "adjudication" by the Attorney General of his removability in immigration court, but rather challenges his detention without a

bond hearing pending the resolution of those proceedings, § 1252(g) does not apply. Id. at *6-7. Respondents' broad reading of § 1252(g) as insulating the lawfulness of Petitioner's detention from judicial review, based on the assertion that his detention "aris[es] from the Attorney General's decision to commence proceedings," see ECF No. 13 at 8, "would lead to a result that is not contemplated in the statute and that has been disavowed by the Supreme Court." Ibarra-Perez, 2025 WL 2461663, at *7.

Similarly, Respondents' argument that the Court lacks jurisdiction to hear Petitioner's challenge to his indefinite detention without a bond hearing under § 1252(b)(9) has been expressly rejected by the Supreme Court. See Jennings, 583 U.S. at 291-92. Yet again, the Government's "extreme" interpretation of § 1252(b)(9) as only allowing challenges to its detention authority through an appeal of a final order of removal (i.e. after the period of detention under § 1225(b)(2) or § 1226(a) and (c) has ended) cannot be entertained, because it would "make claims of prolonged detention effectively unreviewable." Id. at 293 ("By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.") Id.

Finally, as discussed in Sanchez Roman, 8 U.S.C. § 1252(a)(5) also does not apply. 2025 WL 2710211 at *5 (citing Singh v. Gonzales, 499 F.3d 969, 977-78 (9th Cir. 2007) (citing Puri v. Gonzales, 464 F.3d 1038, 1041 (9th Cir.2006) (holding that "the REAL ID Act's jurisdiction-stripping provisions ... does [sic] not apply [if the] claim is not a direct challenge to an order of removal ")) (emphasis added). Because there is no final order of removal issued as to Petitioner, and Petitioner does not challenge any order of removal, § 1252(a)(5) does not strip this Court of jurisdiction over his challenge to the lawfulness of his detention under the INA and U.S. Constitution.

### C. Administrative Exhaustion

As this Court has previously found, and as discussed above, to the extent Respondents argue Petitioner should be required to request a custody redetermination hearing before an IJ pursuant to 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d) before seeking habeas relief under the

doctrine of prudential exhaustion, the Court finds requiring Petitioner to request a bond hearing only to be denied one pursuant to Hurtado would be an exercise in futility. See Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") As Respondents acknowledge, BIA decisions are binding on immigration judges, and Hurtado thus precludes an IJ from finding jurisdiction to consider bond for noncitizens like Petitioner. Therefore, judicial intervention enjoining Respondents from preventing Petitioner from having a bond hearing pursuant to the holding in Hurtado is necessary to enable Petitioner to meaningfully avail himself of his administrative remedies.

**D. Likelihood of Success/Serious Questions**

For the following reasons, the Court finds Petitioner has established a likelihood of success on the merits of his challenge to his detention without bond as unlawful under both § 1225(b)(2) and § 1226(c) of the INA.

With regards to Petitioner's challenge pursuant to § 1226(c), the Court notes that Respondents provide no argument in opposition, and therefore concede on this point.

The most important Winter factor thus clearly tips in favor of Petitioner under the less demanding "serious questions" sliding scale test for a prohibitory preliminary injunction, which the parties agree is the appropriate test here. See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1190 (9th Cir. 2024).

**i.  *Section 1225 versus Section 1226***

For the reasons discussed in Maldonado Vazquez and incorporated by reference, the Court finds Respondents' interpretation of § 1225(b)(2) as applying to all noncitizens *present* in the U.S. who entered without inspection is belied by the plain text and other canons of statutory interpretation. WL 2025 2676082, at *11-16. The Court further finds Respondents' application of § 1225(b)(2) to Petitioner is likely unlawful under the INA for a few reasons.

First, the record reveals that when ICE/DHS first apprehended Petitioner as recently as February of last year, even though he turned himself in to ICE only one day after he entered the

country, he was designated as being subject to discretionary detention under § 1226(a) and released pending a hearing date in 2027. His Notice to Appear establishes that Petitioner was determined by Respondents to be "an alien *present* in the United States who has not been admitted or paroled" rather than "an arriving alien." (emphasis added). Respondents have presented no evidence that the February 2024 NTA was rescinded or that a new one was issued, nor any determination by ICE/DHS that Petitioner is detained under § 1225(b), other than the arguments made by Respondents in their briefing. Respondents have presented no evidence or legal authority for them to *sua sponte* adjust his classification from the NTA without notice or explanation. Accordingly pursuant to ICE/DHS' own classification of Petitioner, he is subject to detention under § 1226, not § 1225, even though he has not resided in the U.S. for longer than two years.

To the extent Respondents might assert that their apprehension of him in August 2025 in Utah, far from any port of entry, provides a basis for detaining him under § 1225(b)(2), despite their previous detention of him under § 1226(a), the Court finds Petitioner can no longer be said to be "seeking initial entry" but rather, at the time of his apprehension in August of this year, he had already "effected an entry" after residing in the U.S. since February 2024. See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 138-40 (2020) (describing the due process rights of a noncitizen who has "effected an entry" versus an "applicant for admission" who is "seeking initial entry" and treated as being "stopped at the border" due to being detained shortly after unlawful entry). See also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent").

Second, the fact that § 1226(c)(1)(E) could apply to Petitioner, because he is (1) a noncitizen charged with being inadmissible as being present in the U.S. without having been admitted and (2) was arrested and charged with a theft offense, demonstrates that the Government and BIA's reading of § 1225(b)(2) is implausible because it would render that provision, recently enacted by Congress, superfluous. See Corley v. United States, 556 U.S. 303, 314 (2009). Indeed, the very fact that Respondents fail to substantively address the application of § 1226(c)(1)(E) to

1    Petitioner in their briefing is illustrative of the fact that their proffered statutory interpretation

2    would render that recently enacted provision "entirely redundant" and thus contrary to a "cardinal

3    rule of statutory interpretation." Kungys v. United States, 485 U.S. 759 778 (1988).

4        Finally, the fact that Congress enacted the LRA amendment to § 1226(c) in January 2025

5    against the backdrop of that longstanding practice, further demonstrates that the Government's

6    new interpretation exceeds the detention authority authorized by Congress. See Monsalvo v.

7    Bondi, 604 U.S. __, 145 S. Ct. 1232, 1242 (2025) ("[w]hen Congress adopts a new law against the

8    backdrop of a longstanding administrative construction" a court "generally presumes the new

9    provisions should be understood to work in harmony with what has come before.") (citation

10    omitted).

11        **ii.**   ***Due Process and Mandatory Detention Pursuant to 8 U.S.C. § 1226(c)***

12        The Court next turns to the Due Process challenge raised by Petitioner as to the application

13    of Section 1226(c)(1)(E)(ii) to him. The Court first notes that Respondents provide no written

14    response to Petitioner's argument that his detention without bond pursuant to § 1226(c)(1)(E)(ii)

15    violates the Due Process Clause of the Fifth Amendment, and thereby concede the merits of

16    Petitioner's challenge. See e.g., Pernell v. City of Los Angeles, 650 F. Supp. 3d 910, 933 (C.D.

17    Cal. 2022) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put

18    forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.")

19    (citation omitted). The Respondents did raise arguments at the hearing which the Court addresses

20    here despite their failure to respond in writing.

21        As the parties have offered differing constructions of the statute based upon its plain

22    language, the Court must consider the constitutional implications of the parties' respective

23    constructions. Considering the Court's finding that both parties' constructions are ostensibly

24    plausible from the plain language of the statute, the doctrine of constitutional avoidance "comes

25    into play" here. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1200 (9th Cir. 2022) (citing Jennings,

26    583 U.S. at 296). Specifically, the Court finds that Respondents' argument as to the application of

27    Section 1226(c) to Petitioner—asserted for the first time at the hearing—requires a construction

28    of the statute that would render part of the statutory scheme unconstitutional. The Court thus rejects

1  this interpretation. The Court further finds that the proper construction of the statute—which

2  'avoids' a "serious constitutional threat" under the Due Process Class—demonstrates that Section

3  1226(c)(1)(E)(ii) does not apply to Petitioner. Zadvydas, 533 U.S. at 699 (interpreting the INA to

4  limit the Government's detention authority after a certain period pursuant to the doctrine of

5  constitutional avoidance due to the "serious constitutional threat" that would arise without such a

6  limitation). The Court's elaboration of this holding follows.

7                    1. Due Process

8          The Respondents' asserted interpretation of the INA would lead to a constitutional

9  violation. Specifically, the Court finds the application of § 1226(c)(1)(E)(ii) to Petitioner would

10  violate his procedural due process rights, under the test set forth in Matthews v. Eldridge, 424 U.S.

11  219, 225 (1976). See Rodriguez Diaz, 53 F.4th at 1203-07 (9th Cir. 2022) (collecting cases

12  applying the Matthews balancing test to due process challenges to detention under § 1226 and

13  holding "[u]ltimately, Matthews remains a flexible test that can and must account for the

14  heightened governmental interest in the immigration detention context"). Under Matthews, the

15  "identification of the specific dictates of due process generally requires consideration of three

16  distinct factors." 424 U.S. at 334-35. "First, the private interest that will be affected by the official

17  action; second, the risk of an erroneous deprivation of such interest through the procedures used,

18  and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

19  Government's interest, including the function involved and the fiscal and administrative burdens

20  that the additional or substitute procedural requirement would entail." Id. at 335 (emphasis added).

21          First, Petitioner has a strong liberty interest in freedom from unlawful detention. See

22  Rodriguez Diaz, 53 F.4th at 1207 ("an individual's private interest in freedom from detention is

23  unquestionably substantial.") (citations and quotation marks omitted). Additionally, Petitioner's

24  private interest is not diminished by any final order of removal—rather he has a pending

25  application for asylum currently being adjudicated in removal proceedings. Cf. id. at 1208 (holding

26  the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final

27  order of removal, had already been afforded an individualized bond hearing, and had additional

28  process available to him through a further bonding hearing before an IJ upon a showing of

1    materially changed circumstances). Likewise, Petitioner's liberty interest is not diminished by any

2    process currently available to him, because neither an IJ nor the BIA have jurisdiction to consider

3    his constitutional challenge to § 1226(c). See Sola, 720 F.3d at 1135.

4        Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest

5    through the procedures used, and the probable value, if any, of additional procedures." Matthews,

6    424 U.S. at 335. There is no evidence in the record that *any* procedure is currently available for

7    Petitioner to challenge the lawfulness of his detention under § 1226(c). If Petitioner requests a

8    custody redetermination by an IJ, even where the Court enjoins the application of 8 U.S.C. §

9    1225(b)(2) to Petitioner, the IJ would have to find that it lacked jurisdiction to consider bond under

10   § 1226(c)(1)(E)(ii). The only process to challenge that provision as unconstitutional would be

11   through a habeas petition before this Court. See Sola, 720 F.3d at 1135.

12       Respondents' asserted construction thus would not only create a "risk" of "erroneous

13   deprivation," but it would *guarantee* it by requiring Petitioner to be detained even where the

14   existing procedures for determining whether appropriate culpable conduct could be attributed to

15   him—*i.e.*., a criminal trial—has established that he is not responsible. Importantly, in considering

16   § 1226(c) prior to the Laken Riley Act amendment, the Supreme Court upheld mandatory detention

17   "for the limited period of [the detainee's] removal proceedings" because it applied to a habeas

18   petitioner who critically did "not dispute the validity of his prior convictions, which were obtained

19   following the full procedural protections our criminal justice system offers." Demore, 538 U.S. at

20   517-18. The opposite is true here—Section 1226(c) as amended by the Laken Riley Act and

21   applied to Petitioner would mandate his detention even though the procedural protections of our

22   criminal justice system revealed that Petitioner is not guilty of the crimes he was charged with.

23   Indeed, Respondents' counsel conceded at the hearing that their construction of the statute would

24   mean that an individual who was clearly misidentified and arrested or charged with a crime based

25   upon such misidentification would still be subject to mandatory detention without a hearing

26   pursuant to § 1226(c)(1)(E)(ii). Such an interpretation would turn due process on its head by

27   rendering its protections meaningless.

28       The additional procedure of an individualized bond hearing would substantially mitigate

- 18 -

the risk (or guarantee) of erroneous deprivation of Petitioner's liberty, because it would require the Government to establish that Petitioner presents a flight risk or danger to the community, even though he was acquitted of all criminal charges. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by the IJ could further be appealed by Petitioner, and he could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted).

Moreover, while the Court recognizes the Government's interest in "preventing aliens from 'remain[ing] in the United States in violation of our law,'" id. at 1208 (citing Demore, 538 U.S. at 518), and "protecting the public from dangerous criminal aliens," id. (citing Demore, 538 U.S. at 515), the Government has not explained how these interests are supported by Petitioner's detention without the possibility of release on bond while his removability is adjudicated. To the extent those interests are implicated, the Government would be able to present evidence of Petitioner's dangerousness or flight risk to the IJ as reasons why he should not be released on bond. Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk serves the Government and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

As the Supreme Court held in Zadvydas, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." Id. Under Zadvydas, "government detention violates that Clause unless the

detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690. Here, Respondents have presented no legitimate interest in continuing to detain Petitioner without the opportunity for a bond hearing, let alone a "special justification." And if § 1226(c) mandates Petitioner's detention, with no regard for the fact that he was acquitted of all criminal charges through the procedural protections provided in the underlying criminal proceedings, that provision would be unconstitutional as applied to Petitioner. Id. at 699; see generally, United States v. Scott, 437 U.S. 82, 91 (1978) ("[T]he law attaches particular significance to an acquittal" and treats it as final) (citations and quotation marks omitted).

In sum, the Court finds the Matthews factors weigh in favor of Petitioner on his as applied due process challenge to § 1226(c)(1)(E)(ii). See also Doe v. Moniz, No. 1:25-CV-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025) (finding the application of § 1226(c)(1)(E)(ii) to mandate detention of the petitioner without a bond hearing based on an arrest for which no charges were filed violated the petitioner's due process rights under Matthews).

### 2. Constitutional Construction of Statute

The Court finds that pursuant to the doctrine of constitutional avoidance the proper construction of the statute means that it cannot be applied to Petitioner. Jennings, 538 U.S. at 296. As discussed above, the plain text of § 1226(c)(1)(E)(ii) can be plausibly read as mandating Petitioner's detention. However, such an interpretation would, as noted, violate Petitioner's due process rights. Therefore, the Court finds that the statutory text's reference to a person who "is charged with" or "is arrested" for a theft-related offense, in the present tense, cannot be read to apply to a person has previously been arrested for and charged with a crime where they have also been acquitted of the crime. See Santiago Helbrum v. Bondi, No. 4:25-cv-00349-SHL-SBJ, ECF No. 30 at 1 (S.D. Iowa Sept. 30, 2025) (interpreting § 1226(c)(1)(E) as mandating detention when an alien "is charged with" certain crimes does not apply after charges are dismissed, because "it is no longer accurate to say that a person 'is charged with' theft (present tense)" after those charges are dismissed). Accordingly, the Court finds § 1226(c)(1)(E)(ii) does not apply to Petitioner and

directs Respondents to provide him a bond hearing under § 1226(a).

### E.  Balance of the Equities and Public Interest

In Maldonado Vazquez, the Court's analysis regarding these factors rested in part on the fact that Mr. Maldonado Vazquez had established at a bond hearing to the satisfaction of an IJ that he was neither a flight risk nor danger to the community, such that the Government's interest in his continued detention was minimal. WL 2676082, at *22-23. Here the Court simply finds that to the extent Petitioner poses such a risk that Mr. Maldonado Vazquez does not, the Government's interest is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Petitioner is warranted. The Court simply enjoins Respondents from asserting Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or § 1226(c), pursuant to its obligation to interpret the relevant statutory provisions of the INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024).

In all other respects, the Court finds the Winter factors tip sharply in favor of Petitioner for the same reasons set forth by this Court in Maldonado Vazquez and incorporated by reference. WL 2676082, at *22-23.

### F.  Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition pursuant to § 2254. See Brown v. Davenport, 596 U.S. 118, 127-28 (2022)

The Court finds that the specific harm Petitioner suffered—that he is being unlawfully detained without a bond hearing—is remedied by granting his request for a bond hearing under 8 U.S.C. § 1226(a) within seven days and enjoining Defendants from denying bond on the basis that he is detained under § 1225(b)(2) or § 1226(c). The Court sets a seven-day deadline because it

finds Petitioner has been unlawfully detained under § 1225 without a bond hearing, and the procedural due process protections embedded in the right to a bond hearing, for over two months. Given Petitioner's liberty interest is at stake, the Court finds that if a bond hearing is not provided promptly, within seven days of this Order, Petitioner's continued detention would violate his due process rights.

Therefore, the Court, in its equitable discretion in fashioning appropriate § 2254 habeas relief, further orders Respondents to immediately release Petitioner if a bond hearing is not provided by October 21, 2025, unless and until it is determined that he should be detained pursuant to the standard set forth in 8 U.S.C. § 1226(a). See e.g., Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (ordering immediate release or a bond hearing within seven days); Velasquez Salazar v. Dedos, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (ordering a bond hearing or release within seven days); Salazar v. Dedos et al, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025) (ordering similar relief); Kostak v. Trump, No. CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same).

### G. Security

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that providing Petitioner a bond hearing under 8 U.S.C. § 1226(a) will be costly. Therefore, the Court declines to set bond.

## VI.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Preliminary Injunction (ECF No. 4) is **GRANTED**. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

1. Are **ORDERED** to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the entry of this Order.

2. Are **ENJOINED** from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(c).

3. Are **ENJOINED** from removing Petitioner outside of the District of Nevada, to preserve this Court's jurisdiction until the Court enters a final adjudication of the (ECF No. 1) Petition for Writ of Habeas Corpus.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by October 21, 2025, Petitioner shall be released from ICE custody until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report regarding Petitioner's bond hearing by October 24, 2025. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**DATED:** October 14, 2025.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**